## MEAD FIBRE CO. v. UNITED STATES.
### No. 279.

District Court, S. D. Ohio, W. D.
July 28, 1930.

McMahon, Corwin, Landis & Markham, of Dayton, Ohio, for plaintiff.

H. E. Mau, U. S. Dist. Atty., and Frank Hier, Asst. U. S. Dist. Atty., both of Cincinnati, Ohio, and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Herbert S. Fessenden and Wright Matthews, Sp. Attys., Bureau of Internal Revenue, all of Washington, D. C., for the United States.

NEVIN, District Judge.

This is an action at law in which plaintiff prays for judgment against the defendant in the sum of $4,079.11 with interest thereon, for alleged overpayment by plaintiff of income and profits taxes for the fiscal year ending February 28, 1921. By stipulation in writing, entered of record, the respective parties waived trial by a jury and submitted the case to the court for its consideration and determination. The cause came on to be heard before the court on the petition of plaintiff, the answer thereto of the defendant, and an agreed statement of facts. Thereafter, defendant moved the court to enter judgment in its favor. Briefs have been filed by counsel. Counsel for the defendant have requested the court to find the facts in the case to be in accord with the agreed statement of facts. The court grants said request and, adopting the agreed statement of facts, makes the following findings of fact in this case, to wit:

### Findings of Fact

I. The plaintiff, the Mead Fibre Company, an Ohio corporation, was formed from a reorganization of the Kingsport Pulp Corporation, a corporation organized under the laws of Virginia, the former taking over the assets of the latter company and continuing the same business at Kingsport, Tenn. An interest or control in the Mead Fibre Company of more than 50 per cent. remained in the same persons who had owned the stock of the Kingsport Pulp Corporation.

II. The reorganization took place on March 1, 1920, whereby the Kingsport Pulp Corporation sold its entire assets free and clear from incumbrance to the Mead Fibre Company in exchange for the entire capital stock of the latter company which had been organized for the purpose of carrying out this reorganization plan. The stock of the Mead Fibre Company was issued and all of it was paid to the Kingsport Pulp Corporation. First preferred stock of the Mead Fibre Company of a par value of $600,000 was sold by the Kingsport Pulp Corporation for $525,000, or at a discount of 12½ per cent. Common stock of the Mead Fibre Company of a par value of $615,087.08 was sold by the Kingsport Pulp Corporation to the holders of preferred stock in the Kingsport Pulp Corporation for cash. The total cash received by the Kingsport Pulp Corporation for first preferred and common stock of the Mead Fibre Company in the amount of $1,140,087.08 was used by the Kingsport Pulp Corporation to pay off its outstanding indebtedness in accordance with its contract with the Mead Fibre Company in the reorganization plan. Second preferred stock of the Mead Fibre Company of the par value of $691,900 was given by the Kingsport Pulp Corporation to its (the Kingsport Pulp Corporation) stockholders in exchange for the equal amount ($691,900) of Kingsport Pulp Corporation preferred stock for which its stockholders had paid cash to the old company in the amount of $691,900 long prior to this reorganization.

III. On the 14th day of May, 1921, the plaintiff filed in the office of the collector of internal revenue of the United States, for the District of Tennessee, its income and profits tax return for the fiscal year ended February 28, 1921. The sum of $28,173.11 was paid at that time, said sum being the full amount of its income and excess profits tax for the fiscal year ended February 28, 1921, as shown by the return.

IV. Thereafter, and prior to September 18, 1922, the plaintiff's income and excess profits tax return for said year was audited by agents of the Commissioner of Internal Revenue of the United States. As a result of that audit it was advised that an additional tax for said year in the sum of $43,128.43 would be assessed against it.

V. Immediately thereafter the plaintiff notified the Commissioner of Internal Revenue that the statement of additional tax was incorrect, and on the 24th day of October, 1922, presented to the Commissioner additional information.

VI. The Commissioner, on December 1, 1922, notified the plaintiff company that the proposed additional assessment against it had been reduced to $7,449.50.

VII. On December 20, 1922, the plaintiff made application for an appeal from the findings contained in the Department letters dated September 18, 1922, and December 1, 1922, above referred to.

VIII. This appeal was presented to the Committee on Appeals and Review on August 23, 1923. This Committee on August 31, 1923, ruled that plaintiff's appeal was denied in part and sustained in part. Subsequently plaintiff was advised that the proposed additional assessment had been reduced to $5,699.56, and the additional assessment of $5,699.56 was made on 'the May, 1924, list.

IX. An appeal from this ruling was made September 22, 1923. This appeal was denied May 19, 1924.

X. The sum of $5,699.56 was paid by the plaintiff to L. F. Brewer, collector of internal revenue for the district of Tennessee. A protest against this payment was filed therewith.

XI. On July 20, 1924, a claim for the refund of $4,079.11 was filed by the plaintiff. This claim for refund was rejected July 2, 1925.

XII. L. F. Brewer, the collector of internal revenue for the district of Tennessee, to whom the additional assessment was paid, was not in office at the time the petition herein was filed.

XIII. The Commissioner rejected the claim for refund filed July 20, 1924, on the ground that under his interpretation of section 331, he had allowed the plaintiff corporation the full amount of invested capital which would have been allowed the Kingsport Pulp Corporation had no reorganization taken place. This valuation was fixed at $1,548,736.29 by the commission.

XIV. If plaintiff's contention that its invested capital for the taxable year ended February 28, 1921, is $1,833,987.08 is correct, then plaintiff is entitled to judgment in the amount of $4,078.81, together with interest thereon from July 22, 1924.

XV. If defendant's contention that plaintiff's invested capital was properly fixed at $1,548,736.29 by the Commissioner, then defendant is entitled to judgment.

Plaintiff claims that the Kingsport Pulp Corporation and the Mead Fibre Company should be considered as being one corporation for the purpose of determining the war profits and excess profits tax under title 3 of the Revenue Act of 1918 (sections 300–337), and that the actual cash paid into both corporations by the stockholders for stock in said corporations should be the amount of invested capital of the reorganized corporation. The sections of the Revenue Act of 1918 (40 Stat. 1092, 1094, 1095), relied upon by plaintiff, are as follows:

"Sec. 326. (a) That as used in this title the term 'invested capital' for any year means (except as provided in subdivisions (b) and (c) of this section);

"(1) Actual cash bona fide paid in for stock or shares. * * *

"Sec. 330. That in the case of the reorganization, consolidation, or change of ownership after January 1, 1911, of a trade or business now carried on by a corporation, the corporation shall for the purposes of this title be deemed to have been in existence prior to that date, and the net income and invested capital of such predecessor trade or business for all or any part of the prewar period prior to the organization of the corporation now carrying on such trade or business shall be deemed to have been the net income and invested capital of such corporation. * * *

"Sec. 331. In the case of the reorganization, consolidation, or change of ownership of a trade or business, or change of ownership of property, after March 3, 1917, if an interest or control in such trade or business or property of 50 per centum or more remains in the same persons, or any of them, then no asset transferred or received from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed under this title in computing the invested capital of such previous owner if such asset had not been so transferred or received."

The court is of the opinion, however, that the Kingsport Pulp Corporation and the Mead Fibre Company are separate legal entities and as such, under section 239 of the Revenue Act of 1918, are required to file separate income and profits tax returns for the year 1921.

Section 239 of the Revenue Act of 1918 (40 Stat. 1081) provides:

"Sec. 239. That every corporation subject to taxation under this title and every personal service corporation shall make a return, stating specifically the items of its gross income and the deductions and credits allowed by this title. The return shall be sworn to by the president, vice president, or other principal officer and by the treasurer or assistant treasurer. * * *

Plaintiff claims that it is entitled to include as its invested capital the cash received by the Kingsport Pulp Corporation from the sale of its stock and also from the sale

of stock of the Mead Fibre Company, and plaintiff bases this claim on section 326(a)(1) of the Revenue Act of 1918, above referred to. However, in the instant case, the Mead Fibre Company did not sell its stock for cash, but issued its entire outstanding stock to the Kingsport Pulp Corporation in exchange for its assets, free and clear of any incumbrances. Plaintiff company did not take over or assume any of the liabilities of the Kingsport Pulp Corporation. The Kingsport Pulp Corporation disposed of the stock in the manner as set forth in the agreed statement of facts. In view of the fact that the Mead Fibre Company received no cash for its stock, the court is of the opinion that the provisions of section 326(a)(1) of the Revenue Act of 1918 do not apply, but that plaintiff comes within the provisions of section 326(a)(2) of the Revenue Act of 1918 (40 Stat. 1092). Said section reads as follows:

"(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in-surplus. * * *"

The Mead Fibre Company having issued its entire stock to the Kingsport Pulp Corporation in exchange for its tangible property, such tangible property may only be included in invested capital at its actual cash value. Under the limitation placed upon section 326(a)(2) by section 331 of the Revenue Act of 1918, in case of a reorganization or change of ownership of property after March 3, 1917, if interest or control of 50 per cent. or more remain in the same persons, then no assets transferred from the previous owner shall, for the purpose of determining invested capital, be allowed a greater value than would have been allowed such previous owner.

In the instant case, it is agreed that after reorganization on March 1, 1920, an interest or control in the Mead Fibre Company of more than 50 per cent. remained in the same persons who had owned the stock of the Kingsport Pulp Corporation. Consequently, section 331 applies, and the assets transferred to the Mead Fibre Company in exchange for its stock cannot be included in invested capital at a greater value than would have been allowed the Kingsport Pulp Corporation—the total of which, as shown by the balance sheet of the old company as of March 1, 1920, was $1,548,736.29.

It will be noted that by paragraphs XIV and XV of the agreed statement of facts, it is stipulated that in the event certain contentions upon the part of the plaintiff are found to be correct, then plaintiff is entitled to judgment in a certain sum, and that if certain contentions upon the part of defendant are correct, then defendant is entitled to judgment.

In view of the facts as agreed to by the parties and found by the court, and applying thereto the law which the court believes to be properly applicable to this case, the court is of the opinion that "plaintiff's invested capital was properly fixed at $1,548,736.29 by the Commissioner," and this being the opinion and finding of the court, it follows that, as provided in paragraph XV of the Agreed Statement of Facts, "defendant is entitled to judgment." The motion of defendant for judgment in its favor is sustained, as is the prayer of defendant's answer, that defendant be dismissed with its costs.

An order may be drawn accordingly.